**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kingsley Capital Management, LLC, an Arizona limited liability company, and Bruce Paine Kingsley MD IRA Rollover, a Qualified Individual Retirement Account,<br><br>Plaintiffs,<br><br>vs.<br><br>The Members of the Board of Directors of the Park Avenue Bank of New York as of 2008: Donald G. Glascoff Jr., Charles J Antonucci Sr., Bruno De Vinck, Frederick Keller, Patrick R. Murphy, Angella Mirizzi-Olson, Mendel Zilberberg,<br><br>Defendants. | No. CV 12-00418-PHX-NVW<br><br>**ORDER** |

Before the Court is "Defendant's Donald G. Glascoff, Jr., Bruno De Vinck, Frederick Keller, Angella Mirizzi-Olson and Mendel Zilberberg's Motion to Dismiss the Complaint" (Doc. 19). For the reasons stated below, the motion will be granted and the case will be transferred to the Southern District of New York.

**I.     BACKGROUND**

Plaintiff Kingsley Capital Management is an Arizona limited liability company controlled by Dr. Bruce Kingsley, an Arizona resident. Plaintiff Bruce Paine Kingsley MD IRA Rollover is a trust for which Kingsley is the trustee. Kingsley himself is not a plaintiff, but at all times relevant to this action, Plaintiffs acted at Kingsley's direction. For purposes of this order, there is no need to distinguish between Plaintiffs' actions and

Kingsley's actions. The Court's use of "Kingsley" below therefore refers to actions taken by Bruce Kingsley himself, as well as the actions he caused Plaintiffs to take.

This case is an extension of certain cases Kingsley brought previously against various persons and entities by whom he was allegedly defrauded in an investment scheme regarding workers compensation insurance. The Court has elsewhere summarized the relevant allegations in detail. *See Kingsley Capital Mgmt., LLC v. Sly*, 820 F. Supp. 2d 1011, 1014–17 (D. Ariz. 2011). For present purposes, the following suffices.

In March 2008, a Kentucky businessman named Anthony Huff, along with some of his associates, pitched to Kingsley an investment in Huff's workers compensation business — a conglomeration of entities sometimes referred to as "Oxygen." According to Huff and the other promoters, Kingsley's investment would be used to boost Oxygen's insurance reserves, permitting it to expand. Any investment, said the promoters, would be held in FDIC-insured accounts at the Manhattan-based Park Avenue Bank.

At the time of the investment pitch, Charles J. Antonucci, Sr., was president, CEO, and a member of the board of directors of Park Avenue Bank. Antonucci was present during the pitch to Kingsley and confirmed much of what Huff and the other promoters claimed, including that Oxygen was "'doing very well.'" (Doc. 1 ¶ 42.) At a later time, Kingsley alleges that Antonucci told him, "'These guys are making an awful lot of money,'" referring to Huff and those invested in Oxygen. (*Id.* ¶ 53.) Kingsley alleges that Antonucci knew at the time he made these statements that Oxygen was not doing well, but instead required significant credit from Park Avenue Bank. Antonucci also had been authorizing Oxygen's substantial overdrafts, in part in implicit exchange for perks such as rides on Huff's private jet.

In June 2008, Kingsley decided to invest $1.75 million in Oxygen. That money went into accounts at Park Avenue Bank. In part, Kingsley was won over by irrevocable standby letters of credit intended to guarantee the security of his investment. Kingsley received these letters of credit through Park Avenue Bank, with Antonucci's help.

Allegedly, Antonucci never properly collateralized these letters of credit, and did not enter them on the bank's records.

In August 2008, the FDIC informed Park Avenue Bank that the bank had been downgraded from a "well-capitalized" rating to an "adequately capitalized" rating, meaning that the bank could no longer engage in certain transactions without regulators' approval. In an apparent attempt to reestablish Park Avenue Bank's "well-capitalized" rating, Antonucci in October 2008 invested $6.5 million of what he said were his own funds. According to a federal criminal information later filed against Antonucci, this $6.5 million was actually money that Antonucci arranged for the bank to loan to entities related to the workers compensation business in which Kingsley had invested. The principals of these entities (who also had promoted the investment to Kingsley) then caused the entities to transfer that money to Antonucci personally, who then transferred it back to the bank as his "own" funds.

Kingsley's $1.75 million was part of this $6.5 million round-trip transaction, although at the time he was not aware of that. Huff *had* told him that month, however, that Antonucci's supposedly personal investment was actually a loan from Huff. (*See* CV10-2243, Doc. 1-3 ¶ 149.)

In March 2009, Park Avenue Bank sent a letter signed by Defendant Glascoff to all account holders. This letter accompanied the monthly account statement. The letter announced Antonucci's "personal" investment and stated that the bank's financial status had substantially improved because of it. However, according to a later FDIC report regarding Park Avenue Bank, the bank was at that time undercapitalized and under significant scrutiny from the FDIC and the New York State banking regulator. The bank remained under regulatory scrutiny for the balance of that year as it attempted to develop an acceptable capitalization plan.

In January 2010, Kingsley became "increasingly concerned about his security in the [investment] transaction because [among other reasons] he had heard that Antonucci left [Park Avenue Bank]." (CV10-2243, Doc. 1-3 ¶ 150.) On January 24, 2010,

Kingsley directed his attorney to prepare a letter to the bank to confirm the validity of the letters of credit. For reasons that are immaterial here, he never sent the letter.

Park Avenue Bank failed to re-capitalize and was closed in March 2010. That closure effectively doomed the security of Kingsley's investment. Antonucci was eventually indicted in the Southern District of New York on bank fraud and related charges. He pleaded guilty to certain of those charges.

Kingsley sued Antonucci here in Arizona and eventually obtained a default judgment given Antonucci's failure to appear. (CV10-2243, Docs. 44, 45.) In this new action, Kingsley sues those who were directors of Park Avenue Bank at the time Antonucci engaged in his fraudulent schemes. Kingsley's suit appears to have been inspired by the FDIC's report regarding the bank's failure, which concluded that "Park Avenue failed primarily because of lax oversight by its Board and management and a lack of sound corporate governance." (Doc. 1-3 at 3.) Although this statement referred largely to a pattern of reckless underwriting that was typical of many banks before the recent recession, Kingsley nonetheless claims that the directors' inadequate supervision extended to Antonucci, over whom the board had control. Kingsley therefore pleads causes of action for "control person" and indirect liability under the Arizona Securities Act. *See* A.R.S. §§ 44-1991(A), 44-1999(B). Specifically, Kingsley claims:

> The Board Defendants had overall responsibility and authority for formulating sound policies and objectives for PAB [*i.e.*, Park Avenue Bank] and for effectively supervising its affairs during the relevant period.
>
> The Board Defendants had the legal power, either individually or as part of a group, to directly or indirectly control Antonucci's actions and conduct as alleged herein, at all relevant times, up to the date when he no longer was employed by PAB.
>
> The Board Defendants did not act in good faith with respect to their control or lack of control of Antonucci during the relevant period.

> The Board Defendants did not take reasonable steps to maintain and enforce a reasonable and proper ongoing system of appropriate supervision and internal controls during the relevant period.
>
> The Board Defendants did not act with due care as to their control of Antonucci during the relevant period.
>
> The Board Defendants' inaction indirectly induced Antonucci's fraud on [Kingsley] during the relevant period.
>
> * * *
>
> Antonucci is liable to [Kingsley] pursuant to [the Securities Act] . . . .
>
> The Board Defendants are persons who directly or indirectly controlled Antonucci, as alleged herein.
>
> The Board Defendants, and each of them, are thus liable to these plaintiffs, jointly and severally, for their misconduct in violation of [the Securities Act] to the same extent as Antonucci is liable to these plaintiffs for his violations of and liability pursuant to [the Securities Act].

(Doc. 1 ¶¶ 82–87, 91–93.)

All defendants have moved to dismiss based on lack of personal jurisdiction, failure to file within the limitations period, and failure to state a claim. Concerning personal jurisdiction, defendants submitted declarations stating that they are all residents of New York or New Jersey. In addition:

> No Defendant has conducted business in Arizona at any relevant time. No Defendant ever has owned, possessed or held any personal or real property in Arizona. No Defendant ever has had any employees, agents, affiliates or representatives based in Arizona. No Defendant ever has had any bank or brokerage accounts in Arizona. No Defendant ever has solicited or serviced activities or produced tangible goods in Arizona. . . . No Defendant ever has entered into any contracts to conduct any business activities or perform any services in Arizona. No Defendant had, at any time relevant to the allegations in the Complaint, any knowledge

>of Charles Antonucci's fraudulent schemes or any knowledge of his activities in Arizona.

(Doc. 19 at 4.)

## II. PERSONAL JURISDICTION

### A. Legal Standard

The burden to establish jurisdiction rests on the plaintiff, but if (as here) the motion attacking jurisdiction "is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). "The plaintiff cannot simply rest on the bare allegations of its complaint, but uncontroverted allegations in the complaint must be taken as true." *Id.* (internal quotation marks omitted).

As a federal court sitting in diversity, the personal jurisdiction test theoretically depends first on Arizona's long-arm statute, and then on whether exercising personal jurisdiction comports with the U.S. Constitution's due process clause. However, Arizona permits its courts to exercise personal jurisdiction "to the maximum extent permitted by . . . the Constitution of the United States." Ariz. R. Civ. P. 4.2(a). Accordingly, the only question to decide is whether this Court can exercise personal jurisdiction consistent with the U.S. Constitution. The Constitution permits courts to exercise personal jurisdiction over defendants who do not reside in the state in which they have been sued if there is at least "minimum contacts" with that state such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

Kingsley has not argued that any defendant is subject to "general jurisdiction" in Arizona — *i.e.*, that his or her contacts with Arizona are so pervasive that he or she could be sued in Arizona for wrongs that happened both in Arizona and elsewhere. Kingsley therefore must establish "specific jurisdiction." "A court exercises specific jurisdiction where the cause of action arises out of or has a substantial connection to the defendant's

contacts with the forum." *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002).

Specific jurisdiction turns on a three-part test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Mavrix Photo*, 647 F.3d at 1227–28. In tort-based cases such as this one, the first question is itself broken into three elements, sometimes known as the "effects test." It requires showing that "the defendant (1) commit[ed] an intentional act; (2) expressly aimed at the [forum] state; (3) causing harm in the [forum] state that the defendant knew was likely to be suffered in that state." *CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 1107, 1111 (9th Cir. 2004).

This test must be satisfied as to each defendant. Moreover, Kingsley may not rely on Park Avenue Bank's contacts with Arizona to establish jurisdiction over these defendants. He must establish that each defendant's personal actions (whether or not taken on the bank's behalf) created the necessary minimum contacts with Arizona to justify specific jurisdiction. *Calder v. Jones*, 465 U.S. 783, 790 (1984); *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 522 (9th Cir. 1989) Personal jurisdiction over corporate officers is proper when they were primary and direct participants in the supposedly wrongful acts. *Cummings v. W. Trial Lawyers Ass'n*, 133 F. Supp. 2d 1144, 1155–56 (D. Ariz. 2001).

**B.     Analysis**

Kingsley's argument in favor of personal jurisdiction over defendants rests entirely on his relationship with Park Avenue Bank generally and Antonucci in particular.

Kingsley points to the fact that he opened multiple accounts at Park Avenue Bank, all of which Antonucci solicited. He also points to the letters of credit which he claims were drafted and negotiated in Arizona, with Antonucci's participation. Finally, he notes that he received the monthly account statements from Park Avenue Bank, at least one of which included a letter (to all account holders) from Defendant Glascoff regarding Antonucci's "personal" $6.5 million investment.

Kingsley's allegation about Glascoff's letter to account holders is the only allegation mentioning any defendant by name. As to Glascoff, this single letter is insufficient to establish purposeful direction of his activities at Arizona. Although a "single act can support jurisdiction" if it "creates a substantial connection," "single or occasional acts related to the forum may not be sufficient to establish jurisdiction if their nature and quality and the circumstances of their commission create only an attenuated affiliation with the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (citations and internal quotation marks omitted). Glascoff's letter created no "substantial connection." Given its content and the fact that it was sent to account holders generally, its "nature and quality and the circumstances of [its transmission] create[e] only an attenuated affiliation with [Arizona]." *Cf. Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1077 (10th Cir.1995) (series of phone calls and faxes insufficient to show minimum contacts); *Gehling v. St. George's Sch. of Med., Ltd.*, 773 F.2d 539, 544 (3d Cir. 1985) (single, form-type letter mailed to forum state insufficient to establish personal jurisdiction).

Kingsley's complaint otherwise contains no allegations that would support personal jurisdiction over any defendant. Admittedly, this may be due to the nature of the causes of action he asserts against defendants. Kingsley's "control person" claim, in particular, permits liability essentially for failure to supervise properly, regardless of the control person's knowledge or state of mind. *See* A.R.S. § 44-1999(B) ("Every person who, directly or indirectly, controls any person liable for a [primary] violation of [the Securities Act] is liable . . . to the same extent as the controlled person . . . unless the

controlling person acted in good faith and did not directly or indirectly induce the act underlying the action."); *E. Vanguard Forex, Ltd. v. Ariz. Corp. Comm'n*, 206 Ariz. 399, 411–13, 79 P.3d 86, 98–100 (Ct. App. 2003) (relying on Arizona state legislature's intent to uphold control person liability where alleged control persons had no knowledge of fraudulent practices but "disregard[ed] their duty to monitor the activities of the controlled person"). But the fact that the legislature may have intended to create a broad-reaching cause of action does not give the legislature power to create jurisdiction as well. In a CERCLA case, for example, a plaintiff argued that jurisdiction over a foreign parent corporation was appropriate in part because of CERCLA's comprehensive reach. *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 590 (9th Cir. 1996). The Ninth Circuit, however, rejected the notion that the scope of liability affected personal jurisdiction:

> . . . [Plaintiff] may not use liability as a substitute for personal jurisdiction. Even if the requirement of personal jurisdiction allows a parent corporation to avoid liability, and thus undercuts CERCLA's sweeping purpose "to affix the ultimate cost of cleaning up these disposal sites to the parties responsible for the contamination," liability is not to be conflated with amenability to suit in a particular forum. Personal jurisdiction has constitutional dimensions, and regardless of policy goals, Congress cannot override the due process clause, the source of protection for non-resident defendants.

*Id.* at 590–91 (citations omitted). Likewise, the Arizona legislature may not use the Securities Act's scope of control person liability to extend the constitutional scope of personal jurisdiction. Accordingly, on this record, Kingsley has not established personal jurisdiction over any defendant.

### C. Request for Jurisdictional Discovery

Kingsley's request for jurisdictional discovery will be denied. Although jurisdictional discovery is appropriate in some cases, it is not appropriate here. Kingsley may sue these defendants in New York, and Kingsley has offered no credible argument

why suing them in New York is unduly burdensome. To the contrary, the scope of litigation Kingsley has instituted based on the fallout from his investments, and his travels and wealth described in his various complaints, all suggest that he has more than ample resources to pursue this action where jurisdiction is unquestionable. Jurisdictional discovery would therefore be needless expense simply to resolve whether the lawsuit may remain in Arizona.

### D. Transfer Under 28 U.S.C. § 1631

Lacking jurisdiction, the Court does not reach defendants' statute of limitations and failure-to-state-a-claim arguments. However, where (as here) a "court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer [the] action . . . to any other . . . court in which the action . . . could have been brought at the time it was filed." 28 U.S.C. § 1631. The record discloses that these defendants would be subject to at least specific personal jurisdiction in the Southern District of New York, where Park Avenue Bank was headquartered. In the interests of justice, this action will be transferred there.

IT IS THEREFORE ORDERED that "Defendant's Donald G. Glascoff, Jr., Bruno De Vinck, Frederick Keller, Angella Mirizzi-Olson and Mendel Zilberberg's Motion to Dismiss the Complaint" (Doc. 19) is GRANTED.

IT IS FURTHER ORDERED, pursuant to 28 U.S.C. § 1631, that the Clerk shall transfer this case to the Southern District of New York.

Dated this 15th day of August, 2012.

Neil V. Wake
United States District Judge